IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| EARL THOMAS WALKER, JR., )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>JAILER MIKE TOOMBS, )<br>)<br>Defendant ) | CASE NO. CV98-HGD-2140-M |

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, Earl Thomas Walker, Jr., has alleged that he was subjected to excessive force by DeKalb County Jailer Mike Toombs on August 15, 1998, while he was incarcerated in the DeKalb County Jail as a pretrial detainee. The defendant's motion for summary judgment was denied by United States District Judge Edwin L. Nelson on March 8, 1999, and the matter was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct an evidentiary hearing. [Document #25].

On May 18, 1999, an evidentiary hearing was held at the United States Courthouse in Huntsville, Alabama. In addition to the testimony taken at that time, the plaintiff submitted for consideration the affidavits of witnesses John F. Betton, Reynard Ford and Jonathan Phillips. After reviewing all of the testimony and evidence submitted, the undersigned magistrate judge makes the following proposed findings of fact and conclusions of law.

TESTIMONY AND AFFIDAVIT EVIDENCE

**Earl Thomas Walker, Jr.**

Plaintiff testified that on August 15, 1998, he was in Cell Block One in the bull pen area of the DeKalb County, Alabama, jail with Bernard Ford and John Betton when the defendant, Mike Toombs, came into the bull pen area and stated, "Walker, are you having fun?" Walker states that Toombs then sprayed a direct stream of pepper mace into his face and eyes. According to plaintiff, Toombs then stated, "What about you, Ford?" and sprayed both Ford and Betton. Plaintiff states that, after being sprayed, all three were carried out to the lobby area of the jail and given wet paper towels. [Tr.-05].[1]

Plaintiff was asked what, if anything, was going on before this happened. He stated, "[N]othing at all. We was all three was laying on our beds." [Tr.-06]. On cross-examination, plaintiff was asked if he had ever told any jail official that he and the other two inmates were engaged in horseplay during this incident. He replied, "No. During the time I was sprayed, I was laying on my bed." [*Id.*]. The following exchange then occurred between defense counsel and the plaintiff:

> Q. Had you been engaged in any horseplay with the other two cellmates?
> A. Maybe.
> Q. On that day?
> A. Maybe earlier. Yes.

---

[1] References to the evidentiary hearing transcript are hereinafter designated "Tr.-##, where "##" is the page number.

2

[Tr.-07]. Plaintiff further stated that, after this incident, he requested medical treatment and was given wet paper towels. [*Id.*]. According to Walker, he suffered no long-term effects or medical problems as the result of having been sprayed. [Tr.-08].

This was the only testimony offered by the plaintiff at this hearing. However, the affidavits of plaintiff's two cellmates and a third witness to the event later were tendered to the court by the plaintiff.

**John Betton**

According to the affidavit submitted by John Betton, "on or about August 28" of 1998, he, Reynard Ford and Earl Walker were inside cell B-P-1. Walker was lying down talking with Ford, while Betton was looking at a book when jailer Mike Toombs walked through the cell door, stopped between Walker's and Ford's sleeping areas and stated, "Walker, are you having fun?" According to Betton, as Toombs was speaking, he was pulling out his pepper spray. He then proceeded to spray Walker without any threatening gestures or quick movements on Walker's part.

Betton stated that Toombs then turned to Ford and stated, "How about you, Ford, are you having fun?" He then sprayed Ford. Toombs then turned toward the cell door like he was leaving but then turned to Betton and stated, "What about you, Betton, are you having fun?" He then sprayed Betton. Betton states that he tried to protect his face and, in the process, hurt his right index finger in a hole in the bunk above his bunk. According to Betton, Officer Toombs was never in danger.

3

**Reynard Ford**

Reynard Ford also submitted an affidavit on behalf of the plaintiff. He states that on August 15, 1998, Earl Walker, John Betton, and he were all in cell B-P-1 playing. Someone stated that the jailer was in the catwalk area, so they stopped playing and lay on their bunks. Thereafter, jailer Mike Toombs entered the area and asked if they were having fun. He asked Walker if he was having fun and sprayed him with pepper spray. He then asked Ford if he was having fun and sprayed him. He then said the same thing to John Betton and sprayed him. Ford states that he asked Toombs why he sprayed them. Toombs responded that he thought they were fighting.

**Jonathan Phillips**

Jonathan Phillips also submitted an affidavit.[2] He states that on or about August 28, Walker, Betton, and Ford were horseplaying in the bullpen. According to Phillips, Toombs watched them through the bars and then entered the bullpen area. Phillips states that by this time all three inmates were either sitting or lying down.

In his affidavit, Phillips states that Toombs asked Walker if he was having a good time and then sprayed him with pepper spray. He next asked Ford if he was having a good time and then sprayed him, also. Toombs acted like he was leaving the cell block and then came back in and sprayed Betton who was lying on his bed. Phillips claims that there were no threatening gestures toward Toombs and that everyone was sitting or lying on his bed when they were sprayed.

---

[2] Though not involved in this altercation, Phillips was apparently an inmate at the DeKalb County jail at the time of this incident.

### Jailer Mike Toombs

Michael Toombs testified that he was a jailer for DeKalb County jail in August 1998, a position he has held since January 1997. [Tr.-10]. Toombs has a bachelor's degree in Sociology from Athens State University and is a certified corrections officer. He also is certified in the use of pepper spray. [Tr.-10-11].

Toombs testified that on August 15, 1998, the plaintiff was an inmate at the DeKalb County jail. He was familiar with the fact that on a prior occasion when Walker was an inmate at that facility, he had escaped. [*Id.*]. He also was aware that Walker was currently in jail on a charge of intimidating a witness and that Betton and Ford were charged with murder. [Tr.-12].

According to Toombs, on August 15, 1998, he and his partner, James Denton, were working at the jail when they heard a loud "distress holler." He proceeded to a vantage point on a catwalk to view the bullpen area and observed Bernard Ford behind Walker, choking him. At the same time, John Betton was in front, hitting plaintiff. Toombs was concerned that either Walker was being hurt or that the combatants were staging the fight to set up a jail break. [Tr.-15-16].

Toombs yelled at the three to stop but got no response. Then, he and Denton went to the door that leads to the bullpen area. Denton opened the door and Toombs entered the bullpen area. He again ordered the inmates to stop fighting. Again, they did not respond. [Tr.-17]. Toombs then sprayed Bernard Ford with pepper mace and he let go of Walker. He then told them to get down. Betton went to his bunk and Walker started to back up but then began to curse and yell at the jailer stating, "We weren't doing anything, motherf____, get out of here." When Walker started toward Toombs, Toombs sprayed him with pepper spray, also. [*Id.*]. Betton then began to yell at Toombs and began to get up. When Betton ignored an order to get back down and lunged at Toombs, he, too,

5

was shot with the pepper spray. Shortly thereafter, all three inmates were given wet towels and Walker was put in front of a fan to alleviate the effects of the spray. All three were asked if they wanted to see a doctor, but none wished to do so. [Tr.-19]. On that same date, Toombs summarized the incident in a written report. A review of that report by the undersigned magistrate judge shows it is consistent with his in-court testimony. [*See* Defendant's Exhibit 2]. According to Toombs, he did not intend to harm Walker or anyone else nor did he act maliciously. He stated that he believed that his response was reasonable. [Tr.-22].

**Jailer James Denton**

James Denton testified that he was on duty at the DeKalb County jail on August 15, 1998, with Officer Mike Toombs. He stated that they were both in the front of the jail at their desks when they heard a loud hollering in the back accompanied by a loud noise. They went to a catwalk to observe the bullpen area. From this vantage point, he observed plaintiff, Betton and Ford engaged in what appeared to be a fight. [Tr.-24-25].

He and Toombs went to the bullpen door where Toombs ordered the three inmates to stop and get down. Denton unlocked the bullpen door and Toombs entered first. Denton followed after he removed the key from the lock. By the time he entered, Ford and Walker already had been sprayed. He observed John Betton yelling at Toombs and starting to get off his bunk. Toombs told him to stay down and, when Betton got up and came towards him, Toombs sprayed Betton. [Tr.-25]. After the incident, all three were taken out and given wet paper towels and Walker was put in front of a fan. [Tr.-27-28].

6

Denton testified that he also considered all three inmates to be dangerous and considered the situation potentially riotous. [Tr.-25]. He stated that he considered Toombs' actions to be reasonable under the circumstances. [Tr.24]. Immediately following these events, Denton prepared an incident report. A review of that report reflects that it is consistent with Denton's testimony. [*See* Defendant's Exhibit 3].

### Chief Jailer Bill Lands

Officer Bill Lands testified that he is the chief jailer at the DeKalb County Jail. He identified a copy of the jail's operating policies and procedures. [Defendant's Exhibit 4]. He testified that jail policy provides for the use of chemical spray to control situations that are less serious. It is the only weapon carried by the jailers inside the jail. [Tr.-32-33].

Officer Lands also testified that the DeKalb County Jail keeps a log of all inmate requests for medical attention. He reviewed these records for the time period immediately after this incident. It reflects no request for medical attention by the plaintiff, Walker. However, it does reflect a request for medical attention from John Betton for an injured right index finger. [Tr.-33].

The day after the incident, Officer Lands investigated the incident. He and DeKalb County Sheriff Cecil Reed interviewed the inmates and ascertained the physical condition of each. All stated that they were okay. They also stated that they had just been horse-playing and scuffling. Officer Lands' investigation led him to the conclusion that jailer Toombs' actions had been a reasonable way to handle the incident without excessive force. [Tr.-34-35].

7

**Sheriff Cecil Reed**

DeKalb County Sheriff Cecil Reed testified that he was sheriff in August of 1998 and talked to the plaintiff and the other two inmates about the incident. He stated that they told him that they were scuffling and playing around in the jail and they got sprayed. He also asked if they needed medical attention, and they did not want any. [Tr.-36]. He also concluded that Officer Toombs behaved reasonably. [*Id.*].

**Excessive Force Claim**

Because Walker was a pretrial detainee at the time of the incident made the basis of this action, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir. 1985). However, there is little or no distinction between the Fourteenth Amendment and Eighth Amendment analysis in excessive force cases. *See Graham v. Connor*, 490 U.S. 386, 395, n.10, 109 S. Ct. 1865, 1871 n.10, 104 L.Ed.2d 443 (1989). The inquiry focuses on the need for application of force, the relationship between the need and the amount of force used, and the extent of injury inflicted upon the inmate. *Whitley v. Albers*, 475 U.S. 312, ___ S.Ct. ___, ___ L.Ed.2d ___ (1986). *See also Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987). Under *Albers*, the reasonableness of a jail official's use of force turns on whether unnecessary and wanton pain was inflicted on the inmate. The court must determine "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. at 320-21, ___ S.Ct. at ___. In evaluating the challenged conduct of prison officials, a court must keep in mind the paramount concerns of maintaining order and discipline in an often dangerous and

8

...
...

unruly environment. *Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987). In *Hudson v. McMillian*, 503 U.S. 1, ___ S.Ct. ___, ___ L.Ed.2d ___ (1992), the court set out certain factors to be considered in evaluating whether the use of force was wanton and unnecessary under *Whitley v. Albers*. They include the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the prison officials, any efforts made to temper the severity of a forceful response, and the extent of the injury suffered by the inmate. The absence of serious injury is relevant but not dispositive. *Id.* at ___, ___ S.Ct. at ___.

A need for the application of force has been shown where a prisoner has created a disturbance or refused a direct order. *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990); *Brown v. Smith, supra*. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Bennett v. Parker,* 898 F.2d at 1533, quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). The management of inmates by guards may "require or justify the occasional use of a degree of intentional force," and decisions made to restore order are entitled to deference. Id.

This case requires that the court make a factual determination based on divergent testimony. The plaintiff has the burden of producing a preponderance of evidence to support his claim that he and his cellmates were attacked by jailer Toombs without provocation. He has failed to do so. The defendant and his associate, jailer James Denton, both testified that the plaintiff, Betton, and Ford appeared to be engaged in a fight and ignored orders to cease. Use of pepper spray to assert order in this situation is an appropriate application of force.

Plaintiff testified that he was merely seated on his bunk when sprayed, without provocation. He denies being engaged in horseplay at the time of the incident and only grudgingly admits that he

9

and his cellmates "maybe" were doing so earlier in the afternoon. By contrast, Reynard Ford claims that they were engaged in horseplay until someone spotted Toombs looking at them from the catwalk area, at which time they ceased playing. This is consistent with both jailers' testimony that, upon hearing sounds of distress, they went to the catwalk to see if they could tell what was going on. According to Ford, shortly thereafter, Toombs entered the cell and sprayed them.

Plaintiff's witness, Jonathan Phillips, also stated by affidavit that Walker, Betton, and Phillips were engaged in horseplay which was observed by Toombs from just outside the cell block. This is consistent with the testimony of defendant's witnesses that Toombs and Denton went from the catwalk area to the door of the cellblock. John Betton's affidavit, however, makes no reference to the horseplay alleged by the jailers and admitted by Ford. The testimony of these witnesses contrasts in varying degrees with plaintiff's claim that the only horseplay, if it occurred at all, occurred earlier in the afternoon.

While plaintiff and his witnesses assert that any horseplay that had occurred had ceased by the time that jailer Toombs entered the cell, Toombs testified that it had not. Toombs' version of events is corroborated by Denton. Furthermore, plaintiff, Betton, and Ford each admitted to Sheriff Cecil Reed, the next day, in the presence of Bill Lands, that they had been engaged in horseplay and scuffling when they got sprayed. In addition, plaintiff refused any medical treatment and suffered no significant injury.

Therefore, the magistrate judge finds that plaintiff has failed to demonstrate by a preponderance of the evidence that the force used by the defendant, jailer Mike Toombs, was maliciously and sadistically applied for the purpose of causing harm rather than in a good faith effort to restore order and discipline as is required under *Whitney v. Albers, supra*, to prevail. Because

plaintiff has failed to meet this burden, the magistrate judge **RECOMMENDS** that the court find in favor of the defendant and that this action be **DISMISSED WITH PREJUDICE**.

### NOTICE OF RIGHT TO OBJECT

The parties are **DIRECTED** to file any objections to this Report and Recommendation within a period of fifteen (15) days from the date of entry. Any objections filed must specifically identify the findings in the magistrate judge's recommendation objected to. Frivolous, conclusive, or general objections will not be considered by the district court.

Failure to file written objections to the proposed findings and recommendations of the magistrate judge's report shall bar the party from a *de novo* determination by the district court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the district court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

The clerk is **DIRECTED** to serve a copy of this Report and Recommendation upon plaintiff and counsel for defendants.

**DONE** this 19th day of August, 1999.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE